State, ex rel., v. Burrow.

STATE, *ex rel.* E. GOUGE, *v.* T. J. BURROW, City Recorder.

(*Knoxville.* September Term, 1907.)

1.  **CONSTITUTIONAL LAW.** · Provision to be construed as mandatory, unless contrary conclusively appears.

    Constitutional provisions are presumptively mandatory, and no provision shall be construed otherwise, unless the intention that it shall be so construed unmistakably and conclusively appears upon its face. (*Post, pp.* 381-388.)

    Constitution cited and construed: Art. 2, secs. 17-21.

    Cases cited and approved: Cannon v. Mathes, 8 Heisk., 516; Morrell v. Fickle, 3 Lea, 79; State v. McCann, 4 Lea, 1; Manufacturing Co. v. Falls, 90 Tenn., 482; State v. Yardley, 95 Tenn., 552; Telegraph Co. v. Nashville, 118 Tenn., 1, and cases from other States to be found on pages 382 and 388.

2.  **SAME.** Same. Provision as to style of enacting clause of laws is mandatory.

    The constitutional provision that "The style of the laws of this State shall be, "Be it enacted by the general assembly of the State of Tennessee," is mandatory, and must be complied with. The word "shall" as here used is equivalent to the word "must." (*Post, p.* 388.)

    Constitution cited and construed: Art. 2, sec. 20.

3.  **SAME.** Enacting clause styled, "Be it enacted by the general assembly of Tennessee," omitting the words "the State of" before "Tennessee" complies with the constitution.

    A statute (Acts 1907, ch. 17) whose enacting clause is styled, "Be it enacted by the general assembly of Tennessee," complies with the mandate of the constitution (art. 2, sec. 20) requiring the style of the laws to be, "Be it enacted by the general assembly of the State of Tennessee." The omission of the

State, ex rel., v. Burrow.

words "the State of" does not change the legal meaning, as they are but the expression of a legal fact which exists without their use in this provision.

Acts cited and construed:  Acts 1907, ch. 17.

Constitution cited and construed:  Art. 2, sec. 20.

Cases cited and approved:  Swan v. Buck, 40 Miss., 268; Amusement Co. v. Traction Co. (C. C.), 139 Fed., 358.

Cases cited and distinguished:  People v. Dettenthaler, 118 Mich., 595; Sjoberg v. Association, 73 Minn., 203; Seat of Government Case, 1 Wash. T., 115; State v. Rogers, 10 Nev., 250; May v. Rice, 91 Ind., 546.

FROM SULLIVAN.

Appeal from the Chancery Court of Sullivan County. —HAL H. HAYNES, Chancellor.

E. K. BACHMAN and H. T. CAMPBELL, for complainant.

JOSEPH BURROW, A. C. KEEBLER, A. B. WHITAKER, J. H. WELCKER, and JEROME TEMPLETON, for defendant.

Mr. JUSTICE SHIELDS delivered the opinion of the Court.

This is a petition filed by E. Gouge against T. J. Burrow, recorder of the city of Bristol, in the chancery court of Sullivan county, for a *mandamus* to compel the de-

fendant to issue a license authorizing him to engage in the business of a retail dealer in liquors, wines, beer, and ale in the corporate limits of that city.  The decision of the case involves the constitutionality of chapter 17, p. 81, of the Acts of 1907, passed February 1, 1907, and approved February 8, 1907, popularly known as the "Pendleton Law."

The ground of the attack upon the validity of the act is that the enacting clause is not in the form prescribed by section 20, art. 2, of the constitution, providing that "The style of the laws of this State shall be 'Be it enacted by the general assembly of the State of Tennessee,'" in that it omits the words "the State of."  The title and body of chapter 17, p. 81, Acts of 1907, are in these words:

"An act to amend section 1, chapter 221, of the Acts of the general assembly of 1899, entitled, 'An act to amend section 2, chapter 167, of the Acts of the general assembly of 1887, to prohibit the sale of intoxicating liquors as a beverage near any schoolhouse, public or private, where a school is kept, whether the school be in session or not,' so as to extend the provisions of said section 2, chapter 167, of the Acts of the general assembly of 1887, and said section 1, chapter 221, of the Acts of the general assembly of 1899, and said section 1, chapter 2, of the Acts of the general assembly of 1903, to towns of not more than 150,000 inhabitants hereafter incorporated.

"Section 1.  Be it enacted by the general assembly of

State, ex rel., v. Burrow.

Tennessee that section 1, of chapter 2, of the Acts of the general assembly of 1903, be amended by striking out the word 'five' in line 5 of said section, and inserting therefor the words 'one hundred and fifty.'

"Section 2. Be it further enacted, that this act shall take effect from and after its passage, the public welfare requiring it."

The acts which this and chapter 2, p. 5, of the Acts of 1903, purport to amend, chapter 167, p. 293, of the Acts of 1887, and chapter 221, p. 474, of the Acts of 1899, prohibited the sale by retail of intoxicating liquors, wines, ale, or beer, as a beverage, within four miles of a school-house, public or private, where a school is kept, whether in session or not, except within the limits of incorporated towns other than those incorporated after the passage of the act of 1899, having a population of not more than two thousand inhabitants by the federal census of 1890, or any subsequent federal census.

The act of 1903 amended that of 1899 by striking out the word "two" and inserting the word "five," so as to make the former act apply to towns and cities thereafter incorporated having a population of five thousand inhabitants; and the present act amends that act by striking out the word "five" and inserting the words "one hundred and fifty," so as to make the prohibition extend to cities and towns incorporated after its passage having a population of not more than 150,000 inhabitants.

The city of Bristol was incorporated by an act of the general assembly passed March 22, 1907 (Acts 1907, p.

524, c. 180) and approved March 26, 1907, the former charter having been abolished after chapter 17 of the Acts of 1907 was enacted, and comes within the purview of the last act.

E. Gouge, a citizen of Bristol, conceiving chapter 17 of the Acts of 1907 to be void because of the omission above stated in the enacting clause, demanded of T. J. Burrow, recorder, the license required for retailing liquors as a beverage in this State, so as to authorize him to engage in that business in Bristol; he having previously made arrangements to obtain State and county license from the county court clerk of the county. His demand was refused by the recorder, upon the ground that the sale of intoxicating liquors in the city of Bristol since its reincorporation was prohibited by the act in question. Thereupon this petition was filed. The chancellor, on a hearing before him upon petition and a demurrer thereto, sustained the constitutionality of the act and dismissed the petition. The petitioner has appealed to this court and assigns error.

The power of the general assembly to enact the law in question is not challenged and could not successfully be done. The validity of the statutes of which it is amendatory has been sustained by this court, and is not now an open question. *State v. Rauscher*, 1 Lea, 97; *Hatcher* v. *State*, 12 Lea, 368. The sole ground of attack is that the act was not passed with the ceremony and in the form prescribed by the constitution; that is, that the style of the enacting clause, because of the omission of the words

"the State of," does not comply with the provisions of the constitution upon this subject.

The first question for determination is the proper construction of section 20, art. 2, of the constitution, above set out. Petitioner contends that it is mandatory, and that nothing short of a literal compliance—the use of the exact words of the provision—will support the validity of a statute.

The defendant insists:

(1) That the enacting clause of the statute involved, when properly construed, does comply fully with the provision of the constitution.

(2) That the provision invoked is directory, and that only substantial compliance is required, and that that is done in this statute.

Constitutions are expressions of the sovereign will of the people, the fountain of all power and authority. The several departments of the government are created and vested with their authority by them, and they must exercise it within the limits and in the manner which they direct. The provisions of these solemn instruments are not advisory, or mere suggestions of what would be fit and proper, but commands which must be obeyed. Presumably they are all mandatory. Certainly no provision will be construed otherwise, unless the intention that it shall be unmistakably and conclusively appears upon its face. The supremacy and permanency of republics depend upon the maintenance of the fundamental law, in its integrity, as written in constitutions adopted by

the people; and it is the solemn duty of all those temporarily vested with power, in all departments of the State, to do this.  The necessities of a particular case will not justify a departure from the organic law.  It is by such insidious process and gradual encroachment that constitutional limitations and government by the people are weakened and eventually destroyed.  It has been well said:

"One step taken by the legislature or judiciary in enlarging the powers of government opens the door for another, which will be sure to follow, and so the process goes on until all respect for the fundamental law is lost, and the powers of government are just what those in authority please to make or call them." *Oakley* v. *Aspinwall*, 3 N. Y., 547, 568.

What we have said applies to provisions of the character of the one under consideration.  Mr. Cooley, in his great work on Constitutional Law, at pages 93 and 94, says:

"But the courts tread upon very dangerous grounds when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of a constitution.  Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must then be regarded in the light of limitations upon the power to be exercised.

"It is the province of an instrument of this solemn and permanent character to establish those fundamental

maxims, and fix those unvarying rules by which all departments of the government must at all times shape their conduct; and, if it descends to prescribing mere rules of order in unessential matters, it is lowering the proper dignity of such an instrument and usurping the proper province of ordinary legislation. We are not, therefore, to expect to find in a constitution provisions which the people, in adopting it, have not regarded as of high importance, and worthy to be embraced in an instrument, which, for a time at least, is to control alike the government and the governed, and to form a standard by which is to be measured the power which can be exercised, as well by the delegate as by the sovereign people themselves.

"If directions are given respecting times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of such an instrument when we infer that such directions are given to any other end, especially when, as has been already said, it is but fair to presume that the people in their constitution have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, and with a view to leave as little as possible to implication."

The general assembly is vested with all legislative authority, and within constitutional limitations that au-

thority is absolute. The constitution, however, has pre-
scribed the form and manner of its exercise. The provis-
ions upon this subject are to be found in article 2 of
that instrument, and are as follows:

"Sec. 17. *Origin and Frame of Bills.*—Bills may orig-
inate in either house; but may be amended, altered or
rejected by the other. No bill shall become a law which
embraces more than one subject, that subject to be ex-
pressed in the title. All acts which repeal, revive or
amend former laws shall recite in their caption or other-
wise the title or substance of the law repealed, revived or
amended.

"Sec. 18. *Of Passage of Bills.*—Every bill shall be
read once, on three different days, and be passed each
time in the house where it originated before transmission
to the other. No bill shall become a law until it shall
have been read and passed on three different days in
each house, and shall have received on its final passage
in each house the assent of a majority of all the members
to which that house shall be entitled under this constitu-
tion; and shall have been signed by the respective speak-
ers in open session, the fact of such signing to be noted
on the journal; and shall have received the approval of
the governor, or shall have been otherwise passed under
the provisions of this constitution.

"Sec. 19. *When rejected.*—After a bill has been re-
jected, no bill containing the same substance shall be
passed into a law during the same session.

"Sec. 20. *Style of Laws—When to Take Effect.*—The

style of the laws of this State shall be, 'Be it enacted by the general assembly of the State of Tennessee.'

"No law of a general nature shall take effect until forty days after its passage unless the same or the caption shall state that the public welfare requires that it should take effect sooner.

"Sec. 21. *Journal of Proceedings—Ayes and Noes.*— Each house shall keep a journal of its proceedings and publish it, except such parts as the welfare of the State may require to be kept secret; the ayes and noes shall be taken in each house upon the final passage of every bill of a general character and bills making appropriation of public moneys; and the ayes and noes of the members on any question, shall, at the request of any five of them, be entered on the journal."

These provisions have generally been understood in this State to be mandatory, and all of them, with one exception, that have come before this court for construction, have been held to be of this character. The exception referred to is the provision in section 18 to the effect that the fact that the bill was signed by the respective speakers of the senate and house in open session be noted on the journals. This was held by a majority of the court to be directory, because the phraseology of the entire section was deemed to require such construction. *Home Tel. Co.* v. *Nashville,* 118 Tenn., 1, 101 S. W., 773.

The provision contained in section 17, that "No bill shall become a law which embraces more than one sub-

ject, that subject to be expressed in the title," came before the court for construction soon after the adoption of the present constitution, by which it was first made a part of the organic law of the State, in the case of *Cannon* v. *Mathes*, 8 Heisk., 516, and was held to be mandatory. It is there said:

"The particular portion of this section on which the question in the present case is raised is the following:

" 'No bill shall become a law which embraces more than one subject, that subject to be expressed in the title.'

"Similar provisions have been introduced of late years into many of the State constitutions, and frequent occasions have arisen for their construction by the courts. In several States the courts have construed the provisions to be only directory to the legislatures, and held that their acts are not invalid, although not conforming to the directory requirements of their constitutions. But the courts of most of the States have construed the provisions to be mandatory or imperative, and that therefore the acts not passed in conformity therewith are invalid and void.

"The language adopted in our constitution differs in some respects from that used in other States. 'No bill shall become a law which embraces more than one subject.'

"There is a direct, positive and imperative limitation upon the power of the legislature. It matters not that a bill be passed through three readings in each house, on three different days, and has received the approval

of the governor. Still it is not a law of the State if it embraces more than one subject. It is, therefore, a plain, absolute, and unconditional limitation upon legislative power. But, while it is conceded that a bill which embraces more subjects than one cannot become a law, because of the imperative or mandatory character of the language, yet it is suggested that the remaining portion of the provision, to wit, 'that subject to be expressed in the title,' was not intended to be mandatory, but only directory, and, therefore, that a bill may become a law, although the subject of the bill may not be expressed in the title.

"In the present case we do not deem it necessary to express an opinion whether any provision of a constitution can properly be treated otherwise than as mandatory. The essential nature and object of constitutional law being restrictive upon the powers of the several departments of government, it is difficult to comprehend how its provisions can be regarded as merely directory."

While the provision involved in that case has been liberally construed, so as not to embarrass legislation, yet all subsequent cases involving the question have recognized its mandatory character and the necessity of a compliance with its spirit in the enactment of statutes. *Morrell* v. *Fickle,* 3 Lea, 79; *State* v. *Yardley,* 95 Tenn., 552, 32 S. W., 481, 34 L. R. A., 656; *Cole Manufacturing Co.* v. *Falls,* 90 Tenn., 482, 16 S. W., 1045; *State* v. *McCann,* 4 Lea, 1.

Provisions similar to those embraced in our constitu-

tion are to be found in the organic law of almost all the
States, and there is a conflict in judicial opinion whether
they are mandatory or merely directory. In some States
the one under consideration has been held to be manda-
tory, and a strict compliance with it necessary to the
validity of all legislation enacted. *People* v. *Detten-
thaler,* 118 Mich., 595, 77 N. W., 450, 44 L. R. A., 165;
*Sjoberg* v. *Security Savings & Loan Association,* 73
Minn., 203, 75 N. W., 1116, 72 Am. St. Rep., 616; *State*
v. *Rogers,* 10 Nev., 250, 21 Am. Rep., 738; *May v. Rice,*
91 Ind., 546; *Burritt* v. *Commissioners,* 120 Ill., 322, 11
N. E., 180; *State v. Patterson,* 98 N. C., 660, 4 S. E., 350;
*Seat of Government Case,* 1 Wash. T., 115. In other
States these provisions have been held to be directory
only, and a substantial compliance with them to be suf-
ficient. *Pim* v. *Nicholson,* 6 Ohio St., 177; *McPherson*
v. *Lennard,* 29 Md., 377; *City, etc.,* v. *Riley,* 52 Mo., 424;
*Swann* v. *Buck,* 40 Miss., 268.

The provision we are here called upon to construe is
in plain and unambiguous words. The meaning of it is
clear and indisputable, and no ground for construction
can be found. The language is: "The style of the laws of
this State shall be," etc. The word "shall," as here used,
is equivalent to "must." We know of no case in which a
provision of the constitution thus expressed has been
held to be directory. We think this one clearly man-
datory, and must be complied with by the legislature in
all legislation, important or unimportant, enacted by it;
otherwise, it will be invalid.

State, ex rel., v. Burrow.

Having determined this, we are now to decide whether this mandate of the constitution has been complied with by the general assembly in enacting the Pendleton law.

Written laws, in all times and all countries, whether the edicts of absolute monarchs, decrees of king and council, or the enactments of representative bodies, have almost invariably, in some form, expressed upon their face the authority by which they were promulgated or enacted. The propriety of an enacting clause in conformity to this ancient usage was recognized by the several States of the Union after the American Revolution, when they came to adopt constitutions for their government, and without exception, so far as we can ascertain, express provision was made for the form to be used by the legislative department of the State in enacting laws. This was done in this State when it adopted a constitution in 1796, and the same provision then made is to be found in our present constitution, adopted in 1870. /The † purpose of provisions of this character is that all statutes may bear upon their face a declaration of the sovereign authority by which they are enacted and declared to be the law, and to promote and preserve uniformity in legislation. Such clauses also import a command of obedience and clothe the statute with a certain dignity, believed in all times to command respect and aid in the enforcement of laws. These are the sole purposes of an enacting clause. It is not of the essence of the law, adds nothing to its meaning, and furnishes no aid in its con-

struction. It is a form, but one that is necessary to be used in legislation.

We will now compare the enacting clause provided by the constitution and the one used in this statute. The only difference claimed by the petitioner to be in them is the omission in the latter of the words "the State of." We do not think that this constitutes an appreciable difference, but that they are, in fact and in law, the same —that they are absolutely synonymous.

The sovereign authority they import is the same. They clothe the act with the same dignity, and are equally efficient to promote uniformity in legislation.

It is impossible to point out in the form given in the constitution any element of governmental authority, or shade of human thought, which is not contained in the enacting clause of the statute. No one can read the latter without being impressed with the fact that the statute purports to be enacted by the general assembly of the State of Tennessee.

Tennessee is a sovereign power, and the name, without more, when used in connection with governmental functions, whether in constitutional provision, statutory enactment, or judicial decision, imports sovereignty, as much as do the names of any of the great powers of the world—France, Russia, or Spain. Indeed, so well is this recognized in regard to the names of all the States of the Union that a number of the States, in the enacting clause prescribed by their constitutions, omit the word "State" altogether; that of Alabama being an

State, ex rel., v. Burrow.

illustration, which is in these words:  "Be it enacted by the legislature of Alabama."

The words "the State of" are necessarily and conclusively implied in the phrase "the general assembly of Tennessee."  The implication is certain and unavoidable. The omitted words, and those alone, can be implied, and there is no room for any mistake.  The two clauses, the one provided in the constitution and the one used in the statute, therefore, may be stated with absolute accuracy to be the same in substance, meaning, and form.  Can it, then, be said that the apparent omission of the three words, "the State of," which the human mind involuntarily and with absolute certainty supplies in reading the enacting clause of the statute, when all the purposes of the constitutional provision are accomplished, can have the effect to vitiate a law otherwise duly enacted by the general assembly and approved by the governor of the State?  We think not.  To hold that it did would be to sacrifice substance to the myth of noncompliance with a form in a matter where every purpose of the framers of the organic law had been fully effectuated.  Such an absurd result was not intended and cannot be allowed. While some courts of last resort have held, as we do, that the constitutional provision here invoked is mandatory, yet no case has been called to our attention where a statute has been held void for a failure to comply with that provision, when the enacting clause used necessarily and conclusively expressed the same meaning and had the same effect, although not literally in the form

used. The statutes held void in the cases of *People* v. *Dettenthaler,* 118 Mich., 595, 77 N. W., 450, 44 L. R. A., 165, *Sjoberg* v. *Security Savings & Loan Ass'n,* supra, and the *Seat of Government Case,* supra, had no enacting clause, and are therefore not even analogous to this case. The case of *State* v. *Rogers,* supra, involved the validity of a statute of the State of Nevada with an enacting clause in these words, "The people of the State of Nevada, represented in assembly, do enact as follows," while that required by the constitution of that State was, "The people of the State of Nevada, represented in senate and assembly, do enact as follows."

The omission here was of one of the two branches composing the legislative body, and the act read as if passed by the other branch alone. In other words, instead of it conclusively appearing that the law was enacted by the proper authority, it appeared that it was not, and it was therefore necessarily void. The case of *May* v. *Rice,* supra, was a similar one. The constitution of Indiana required the style of the enacting clause to be, "Be it enacted by the general assembly," and the act held void omitted the words "by the general assembly." This was evidently fatal, as all reference to the enacting power was absent. We have not had access to the Illinois and North Carolina cases, and cannot state the nature of the defects in the enacting clauses of the statutes there held void. The case of *Swann* v. *Buck,* supra, is more in point. The constitution of Mississippi provided that "that style of their [the two houses compos-

ing the legislature] laws shall be, 'Be it enacted by the legislature of the State of Mississippi.'" The style of the act or joint resolution in question was, "Resolved by the legislature of the State of Mississippi." In sustaining the statute in that case it is said:

"It is necessary that every law should show on its face the authority by which it is adopted and promulgated, and that it should clearly appear that it is intended by the legislative power that enacts it that it should take effect as a law. These conditions being fulfilled, all that is absolutely necessary is expressed. The word 'resolved' is as potent to declare the legislative will as the word 'enacted,' . . . the requirement of the constitution is thereby substantially complied with, and the will of the legislature sufficiently declared."

The case of *Montgomery Amusement Co.* v. *Montgomery Traction Co.* (C. C.), 139 Fed., 358, is also analogous. The constitution of Alabama ordains: "The style of the laws of this State shall be, 'Be it enacted by the legislature of Alabama.'" The enacting clause of the statute in question was, "Be it enacted by the legislature of the State of Alabama," and it was insisted that the addition of the words "the State of" rendered the statute invalid. It was held that, while the constitutional provision was mandatory, yet, as the addition of the words "the State of" did not change the meaning, they did not affect the validity of the statute. It is there said:

"The only fault is that the enacting clause goes further than the constitution commands, and declares 'the

State, ex rel., v. Burrow.

legislature of Alabama,' which enacted the statute, is 'the legislature of the State of Alabama.' That, however, is but a statement of a legal fact—a consequence which the constitution itself inevitably reads into every act,"

Applying this reasoning of that case to this statute, how can it be said that the words "the State of" are omitted in contemplation of the constitution, when they are but the expression of a legal fact, which that instrument itself supplies and reads into every enacting clause.

We are, for the reasons herein stated, of the opinion that the enacting clause of this statute does comply with the mandate of the constitution in relation to the style of statutes, and that it is a valid and constitutional law.

The decree of the chancellor is affirmed, with cost.