Weaver, J.
(concurring in part and dissenting in part). I concur with the majority’s holding that the compacts do not violate Const 1963, art 4, § 29, the “local acts” clause.[1] But I dissent from the majority’s decision that the tribal-state gaming compacts at issue, entered into and signed by various Indian tribes and Governor Engler on behalf of the state pursuant to the federal Indian Gaming Regulatory Act (IGRA), 25 USC 2701 et seq., were validly approved by a joint resolution of the Legislature. Accordingly, I would hold that the compacts are void because they are legislation that is required to be enacted by bill, not passed by issuing a joint resolution, and I therefore would reverse the Court of Appeals decision on this issue.
I would also hold that the power to bind the state to a compact with an Indian tribe is an exercise of the legislative power, and that the Governor does not have the authority to bind the state to such a compact. Art 4, § 22 of the Michigan Constitution requires that “ [a]ll legislation shall be by bill. ...” A resolution is not a constitutional method of expressing the legislative will where that expression is to have the force of law and bind people other than the members of the house or houses adopting it. Becker v Detroit Savings Bank, 269 Mich 432, 434-435; 257 NW 855 (1934). The tribal-state compacts have the force of law and bind people other than the legislative members who adopted them. Therefore, the Legislature must exercise its power to bind the state to a compact with an Indian tribe by enacting a *354 bill, not by passing a joint resolution. I would reverse the Court of Appeals on this issue and hold that the compacts at issue are void.
Because I would hold that the compacts are void, it is unnecessary to remand to the trial court for consideration of whether the provision in the compacts that permits the Governor to amend the compacts without legislative approval violates Const 1963, art 3, § 2, the separation of powers doctrine. Such an issue is moot in light of my conclusion that the compacts are void.
i
The compacts at issue were signed by Governor Engler and the various Indian tribes, and approved by the Legislature pursuant to a joint resolution.[2] Appellants argue that the Legislature’s approval by joint resolution was not valid. Appellants assert that the policy determinations in deciding whether and how to allow Indian tribes to operate casinos in Michigan are legislative in nature, and therefore the compacts must be approved by bill, not joint resolution, because the Michigan Constitution, art 4, § 22 requires that “[a]ll legislation shall be by bill.”
Underlying the issue whether the compacts were validly approved is a more fundamental question: who, under Michigan law, has the authority to bind the state of Michigan to a compact negotiated under IGRA. If the authority is vested in Michigan’s Governor, the Governor’s approval alone would be sufficient to render the compacts valid, there would be no requirement that the Legislature approve the compacts at all, and the man *355 ner in which the Legislature approved the compact would not be governed by the Constitution. See Panzer v Doyle, 271 Wis 2d 295, 338-341; 680 NW2d 666 (2004). But if the authority to approve a compact is vested in Michigan’s Legislature, then it is necessary to determine whether approval by resolution was a valid exercise of the Legislature’s power under Michigan’s Constitution.
ii
IGRA does not specify which branch of a state government should bind the state to a compact with Indian tribes.[3] Rather, the determination whether a state has validly bound itself to a compact is a matter of state sovereignty and left to state law. Saratoga Co Chamber of Commerce Inc v Pataki, 100 NY2d 801, 822; 798 NE2d 1047 (2003). For the reasons set forth below, I would hold that it is the Legislature that has the authority to bind the state to a compact under IGRA and that the Governor does not have the authority to bind Michigan to a compact under IGRA.
Michigan’s Constitution separates the powers of government: “The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.” Const 1963, art 3, § 2. The executive power is vested in the Governor, Const 1963, art 5, § 1, and the legislative power is vested in a senate and a house of representatives. Const *356 1963, art 4 § 1. The executive power is, first and foremost, the power to enforce the laws or to put the laws enacted by the Legislature into effect. The People ex rel Sutherland v Governor, 29 Mich 320, 324-325 (1874), People ex rel Attorney General v Holschuh, 235 Mich 272, 274-275; 209 NW 158 (1926); 16A Am Jur 2d, Constitutional Law, § 258, p 165 and § 275, p 193. The legislative power is the power to determine the interests of the public, to formulate legislative policy, and to create, alter, and repeal laws. Id. The Governor has no power to make laws. People v Dettenthaler, 118 Mich 595; 77 NW 450 (1898). “[T]he executive branch may only apply the policy so fixed and determined [by the legislative branch], and may not itself determine matters of public policy or change the policy laid down by the legislature. 16 CJS, Constitutional Law, § 216, p 686.
As explained below, I conclude that binding the state to a compact with an Indian tribe involves determinations of public policy and the exercise of powers that are within the exclusive purview of the Legislature.
IGBA itself contemplates that states will confront several policy choices when negotiating tribal gaming compacts. Saratoga Co Chamber of Commerce Inc v Pataki, supra at 822. Under IGRA, a compact may include provisions relating to: (i) the application of directly related criminal and civil laws and regulations of the tribe or the state; (ii) the allocation of jurisdiction between the state and the tribe to permit enforcement of such laws; (iii) state assessments to defray the costs of regulating gaming; (iv) taxation by the tribe of such activity; (v) remedies for breach of contract; (vi) standards of operation for gaming and maintenance of gaming facilities; and (vii) “any other subjects that are directly related to the operation of gaming activities.” 25 USC 2710(d) (3) (C) (i)-(vii).
*357 The Little River Band compact contains examples of policy decisions made for each of the seven issues recognized in 25 USC 2710(d)(3)(C)(i-vii). (i) Tribal law and regulations, not state law, are applied to regulate gambling.[4] But the compact applies state law, as amended, to the sale and regulation of alcoholic beverages encompassing certain areas. (Section 10 [a], p 13.) (ii) The tribe, not the state, is given responsibility to administer and enforce the regulatory requirements. (Section 4[m][l], p 9.) (iii) To allow state assessments to defray the costs of regulating gaming, the compact states that the tribe shall reimburse the state for the costs up to $50,000 it incurs in carrying out functions that are authorized within the compact. (Section 4[m][5], p 10.) Also, the compact states that the tribe must pay 2% of the net win at each casino derived from certain games to the county treasurer.[5] (Section 18[a][i], p 18.) (iv) Under IGRA the tribe could tax the gaming activity, but the compact does not allow such taxation, (v) The compact provides for dispute resolution procedures in the event there is a breach of contract. (Id., p 11.) (vi) The compact includes standards for whom a tribe can license and hire in connection with gaming (section 4[d], p 6), sets accounting standards the gam *358 ing operation must follow (Id., p 7), and stipulates that gaming equipment purchased by the tribe must meet the technical standards of the state of Nevada or the state of New Jersey. (Section 6[a], p 11.) (vii) The compact addresses the “other subjects that are directly related to the operation of gaming facilities” throughout the document. For example, it allows for additional class III games to be conducted through the agreement of tribe and the state. (Section 3[b], p 5.) Also, the compact states that the tribe must purchase the spirits it sells at the gaming establishments from the Michigan Liquor Control Commission and that it must purchase beer and wine from distributors licensed by the Michigan Liquor Control Commission. (Section 10[b], p 13.)
These compact provisions necessarily require fundamental policy choices that epitomize “legislative power.” Decisions involving licensing, taxation, criminal and civil jurisdiction, and standards of operation and maintenance require a balancing of differing interests, a task the multi-member, representative Legislature is entrusted to perform under the constitutional separation of powers. See Saratoga Co Chamber of Commerce v Pataki, 100 NY2d 801, 822-823; 798 NE2d 1047; 766 NYS2d 654 (2003).
To date, every other state supreme court that has addressed whether the governor or the legislature of a state has the authority to bind the state to a compact with an Indian tribe under IGRA has concluded that the state’s governor lacks the power unilaterally to bind the state to tribal gaming compacts under IGRA. See State ex rel Stephan v Finney, 251 Kan 559; 836 P2d 1169 (1992); State ex rel Clark v Johnson, 120 NM 562; 904 P2d 11 (1995); Narragansett Indian Tribe of Rhode Island v Rhode Island, 667 A2d 280 (RI, 1995); Pataki, *359 supra; Panzer, supra.[6] These cases concluded that entering into a tribal-state compact under IGRA, and thereby committing the state to a particular position with respect to Indian gaming, involves subtle and important decisions regarding state policy that are at the heart of legislative power. Panzer, supra at 62. Further, the cases have relied on the fact that their state constitutions, like Michigan’s, provide for separation of powers, vesting the legislative power in the legislature and vesting the executive power in the governor. Finney, supra at 577; Clark, supra at 573; Narragansett Indian Tribe, supra at 280; Pataki, supra at 821-822; Panzer, supra at 331-334. The cases recognized that the legislature creates the law, that the governor executes the laws, and that a compact with an Indian tribe did not execute existing law, but was, instead, an attempt to create new law. Finney, supra at 573, and Clark, supra at 573. The courts also focused on the balance that the compact struck on matters of policy such as the regulation of class III gaming activities, the licensing of its operators, and the respective civil and criminal jurisdictions of the state and the tribe necessary for the enforcement of state or tribal laws or regulations. Clark, supra at 574; Pataki, supra at 822; Panzer, supra at 338-341.
The approval of a compact with an Indian tribe involves numerous policy decisions. The executive branch does not have the power to make those deter *360 minations of public interest and policy, but may only apply the policy as fixed and determined by the legislature. I would agree with the other state courts that have examined this issue, and hold that committing the state to the myriad policy choices inherent in negotiating a gaming compact constitutes a legislative function. Thus, the Governor does not have the authority to bind the state to a compact with an Indian tribe; only the Legislature does.
hi
Having determined that binding the state to a compact is a legislative function, the question then becomes whether the Legislature may do so by a joint resolution. I would conclude that it may not because under the Michigan Constitution a resolution is not a valid exercise of the legislative power.
The Michigan Constitution requires that “[a]ll legislation shall be by bill... .” Const 1963, art 4, § 22. This Court has previously recognized that “[a] mere resolution, therefore, is not a competent method of expressing the legislative will, where that expression is to have the force of law, and bind others than the members of the house or houses adopting it.” Becker v Detroit Savings Bank, 269 Mich 432, 434-435; 257 NW 855 (1934).
In the 1997-1998 term there were 117 concurrent resolutions introduced in the House of Representatives. Approximately 23 concurrent resolutions were adopted, including HCR 115, which approved the compacts at issue. The other 22 concurrent resolutions adopted included resolutions commemorating the 150th anniversary of the selection of the city of Lansing as the permanent capital of the state of Michigan [HCR 24]; urging the President of the United States to designate the Detroit River as an American Heritage River [HCR *361 69]; prescribing the legislative schedule [HCR 74 & HCR 113]; and renaming the Michigan Civilian Conservation Corps’ Camp Vanderbild in the honor of State Representative Tom Mathieu [HCR 117].
A joint resolution is not an act of legislation, and it cannot be effective for any purpose for which an exercise of legislative power is necessary. Cleveland Terminal & Valley RR Co v State, 85 Ohio St 251, 293; 97 NE 967 (1912). In issuing the joint resolution approving of the compacts in the instant case, the Legislature purported to bind the entire state to the policy decisions of and the terms set forth in the compacts, which would be in place for at least twenty years. This was not a valid exercise of the legislative power, because art 4, § 22 requires that legislation be by bill.
CONCLUSION
I would hold that the power to bind the state to a compact with an Indian tribe is an exercise of the legislative power, and that the Legislature must exercise its power to bind the state by enacting a bill, not by passing a joint resolution. Accordingly, I would conclude that the compacts are void, and I would reverse the decision of the Court of Appeals on that issue. Because I would hold that the compacts are void, it is unnecessary to address whether the provision that permits the Governor to amend the compacts is unconstitutional.

 The majority correctly holds that the “local act” provision of the Michigan Constitution, art 4, § 29, is not implicated by the compacts; I concur in the majority’s decision to affirm the decision of the Court of Appeals on this issue.

 See House Concurrent Resolution (HCR) 115 (1998). While a bill must be passed by a majority of elected and serving members of the Legislature, a resolution may be passed by a majority vote of those legislators present at the time, as long as a quorum is present.

 The igra provides, in pertinent part: “Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities.” 25 USC 2710(d)(3)(A).

 The compact states, “Any limitations on the number of games operated or played, their location within eligible Indian lands as defined under this Compact, hours or period of operation, limits on wages or potsize, or other limitations shall be determined by duly enacted tribal law or regulation. Any state law restrictions, limitations or regulation of such gaming shall not apply to Class III games conducted by the tribe pursuant to this compact.” (Section 3[a][8], p 5 of the Little River Band compact.)

 The compact states that it is the “States intent, in this and its other compacts with federally recognized tribes, that the payments to local governments provided for in this section provide financial resources to those political subdivisions of the State which actually experience increased operating costs associated with the operation of the class III gaming facility-” (Section 18[a][ii], p 18.)

 A federal district court held that the governor of Mississippi did have the authority to bind the state to a compact with the Indian tribes, based on a Mississippi statute which authorizes the governor to transact business with other sovereigns, such as other states, territories, or the United States Government. Willis v Fordice, 850 F Supp 523 (1994). Unlike Mississippi, Michigan has no statutory or constitutional provision giving the Governor authority to bind the state in a compact with an Indian tribe.