WEAVER, J.
(dissenting). I dissent from the majority’s decision holding that the amendatory provision in the compacts at issue, and the exercise of that provision by Governor Granholm, does not violate the Separation of Powers Clause, because the compact containing the amendatory provision was not properly enacted by a legislative bill and the Governor’s exercise of the amendatory provision is outside the limits of the constitution. I would hold that the compacts are void because they are legislation, required to be enacted by bill. As a result, I would hold that the amendatory provisions contained within the compacts are also void.[1]
ANALYSIS
Michigan’s Constitution separates the powers of government: “The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.” Const 1963, art 3, § 2. The executive power is vested in the Governor, Const 1963, art 5, § 1, and the legislative power is vested in the Senate and the House of Representatives, Const 1963, art 4, § 1. The executive power is, first and foremost, the power to enforce the laws or to put the laws enacted by the Legislature into effect. People ex rel Sutherland v Governor, 29 Mich 320, 325 (1874); People ex rel Attorney General v Holschuh, 235 Mich 272, 2s75; *114 209 NW 158 (1926); 16A Am Jur 2d, Constitutional Law, § 258, p 165, and § 275, p 193.
The legislative power is the power to determine the interests of the public, to formulate legislative policy, and to create, alter, and repeal laws. Id. The Governor has no power to make laws. People v Dettenthaler, 118 Mich 595, 602; 77 NW 450 (1898). “[T]he executive branch may only apply the policy so fixed and determined [by the legislative branch], and may not itself determine matters of public policy, change the policy laid down by the legislature, or substitute its own policy for that of the legislature.” 16 CJS, Constitutional Law, § 359, pp 599-600.
Binding the state to a compact with an Indian tribe involves determinations of public policy and the exercise of powers that are within the exclusive purview of the Legislature. The compacts at issue in this case contain examples of policy decisions made for each of the seven issues recognized in 25 USC 2710(d)(3)(C)(i) through (vii).[2]
*115 These compact provisions necessarily require fundamental policy choices that epitomize “legislative power.” Decisions involving licensing, taxation, criminal and civil jurisdiction, and standards of operation and maintenance require a balancing of differing interests, a task the multimember, representative Legislature is entrusted to perform under the constitutional separation of powers. See Saratoga Co Chamber of Commerce v Pataki, 100 NY2d 801, 823; 766 NYS2d 654; 798 NE2d 1047 (2003).
The approval of a compact with an Indian tribe involves numerous policy decisions. The executive branch does not have the power to make those determinations of public interest and policy, but may only apply the policy as fixed and determined by the Legislature. I would hold that committing the state to the myriad policy choices inherent in negotiating a gaming compact constitutes a legislative function. Thus, the Governor did not have the authority to bind the state to a compact with an Indian tribe, as this Court wrongly concluded in Taxpayers of Michigan Against Casinos v Michigan, 471 Mich 306; 685 NW2d 221 (2004), and the Governor does not now have the power to unilaterally exercise the amendatory provisions contained within the compacts.
*116 CONCLUSION
I would hold that the power to bind the state to a compact with an Indian tribe is an exercise of the legislative power, and that the Legislature must exercise its power to bind the state by enacting a bill, not by passing a joint resolution. I conclude that the compacts are void and, accordingly, so are the amendatory provisions contained within the compacts. I would hold that the compacts are void and that the provisions that permit the Governor to amend the compacts are unconstitutional.

 See Taxpayers of Michigan Against Casinos v Michigan, 471 Mich 306, 353-354; 685 NW2d 221 (2004) (Weaver, J., concurring in part and dissenting in part).

 As allowed under 25 USC 2710(d)(3)(C)(i), tribal law and regulations, not state law, are applied to regulate gambling. But the compact applies state law, as amended, to the sale and regulation of alcoholic beverages encompassing certain areas. See § 10(A) of the compact. Under 25 USC 2710(d)(3)(C)(ii), the tribe, not the state, is given responsibility to administer and enforce the regulatory requirements. See Compact § 4(M)(1). As provided in 25 USC 2710(d)(3)(C)(iii), to allow state assessments to defray the costs of regulating gaming, the compact states that the tribe shall reimburse the state for the costs up to $50,000 it incurs in carrying out functions that are authorized within the compact. See Compact § 4(M)(5). Also, the compact states that the tribe must pay two percent of the “net win” at each casino derived from certain games to the county treasurer. See Compact § 18(A)(i). Under 25 USC 2710(d)(3)(C)(iv), the tribe could tax the gaming activity, but the compact does not allow such taxation. As allowed by 25 USC 2710(d)(3)(C)(v), the compact provides for dispute resolution procedures in the event there is a breach of contract. See Compact § 7. As allowed by 25 USC 2710(d)(3)(C)(vi), the compact includes standards for whom a tribe can *115 license and hire in connection with gaming, Compact § 4(D), sets accounting standards the gaming operation must follow, Compact § 4(H), and stipulates that gaming equipment purchased by the tribe must meet the technical standards of the state of Nevada or the state of New Jersey, Compact § 6(A). Under 25 USC 2710(d)(3)(C)(vii), the compact addresses the “other subjects that are directly related to the operation of gaming activities” throughout the document. For example, it allows for additional class III games to be conducted through the agreement of the tribe and the state. Compact § 3(B). Also, the compact states that the tribe must purchase the spirits it sells at the gaming establishments from the Michigan Liquor Control Commission and that it must purchase beer and wine from distributors licensed by the commission. Compact § 10(B).