CITY OF LANSING *v.* MICHIGAN POWER CO.

1. MUNICIPAL CORPORATIONS—POWER COMPANIES—FRANCHISES—CONTRACTS.

A power company exercising a municipal franchise in the streets of a city, when Act No. 264, Pub. Acts 1905 (2 How. Stat. [2d Ed.] § 2941), went into effect, granting to persons and corporations who were engaged in the business of producing electricity for power and lighting purposes authority to construct and maintain lines of wires and poles in the public streets and highways of townships and cities of the State, was entitled to claim the right conferred by statute although it also claimed the privileges granted by the municipal ordinance and franchise: it was not necessary for it to disclaim authority under the franchise from the city in order to entitle it to exercise the power conferred by the statute, which conferred the right on all corporations of the class to which defendant belonged. The purpose of the two enactments was consistent.[1]

2. SAME—CITIES—LEGISLATION.

Although the city had the power to grant the franchise, by the express authority from the legislature, its right was not exclusive; the legislature retained power to grant the same right to any persons to whom it might think proper to do so.

3. STATUTES—RECORDS OF THE LEGISLATURE—IRREGULARITY—PRESUMPTIONS.

Unless the journals of the legislature show that a statute was irregularly passed, it will be presumed that the proceedings of that body were regular.

4. CONSTITUTIONAL LAW — STATUTES — CORPORATIONS — TERMINATION OF FRANCHISE.

The power to amend and repeal laws passed under the Constitution of 1850 creating corporations, does not give to the legislature the right to terminate franchises granted

---

[1] On the question as to whether the privilege of using a street for poles and wires is a contract within the provision against impairing obligation, see note in 50 L. R. A. 147.

to public utility corporations not included in some general law for the creation of corporations.

5. SAME—PUBLIC UTILITY.

When the legislature has conferred the power or privilege to use the streets for a public utility purpose, and the grant has been accepted by user involving great expensé and made upon the faith and credit of the grant, the legislature may not revoke the authority and injure the person or corporation which has relied on the contractual nature of the grant.

6. SAME—AMENDMENT OF FRANCHISE—REPEAL.

The provision of the Constitution of 1909 reserving to the legislature the right to amend, alter or repeal laws conferring rights upon corporations, is prospective in its operation, and does not affect contractual obligations under the act passed in 1905.

7. SAME—FEDERAL CONSTITUTION.

Such contract rights cannot be impaired or destroyed even by constitutional enactments of the State, because the action would be contrary to the provisions of fourteenth amendment to the Federal Constitution.

8. SAME.

When the legislature by a statute invites a public utility corporation to expend money in establishing a plant and extending its service in reliance upon a grant of the right to use the streets and the company has acted upon the invitation and expended money and installed the necessary equipment, a contractual relation has sprung into existence, that is beyond the power of any division of the government to impair by recalling the privilege or franchise.

9. SAME.

Where the house of representatives passed a bill to permit power, light and other corporations to occupy and use the streets and the bill was considered by the senate which proposed certain amendments and adopted them as a part of the act, but later a motion to reconsider prevailed and certain words were struck out of the proposed law, but it did not appear from the record whether the changes restored the bill to its original form or amended it further, except that the senate made a report to the house that

183 Mich.—26.

it concurred in the bill, using the form of report that seemed to be appropriate and usual in case the act was passed as finally reported from the house, the court will assume that the presumption of regularity should prevail, and hold that the act was regularly adopted and passed.

10. SAME—CORPORATIONS.

The constitutional provision forbidding the legislature to create corporations by special act was not infringed, because the law did not create a corporation but rather conferred powers on those already in existence.

11. SAME—CONTRACTS—ACCEPTANCE OF OFFER.

Acts of the defendant in expending a considerable amount of money to extend its lines in the streets and add to its equipment after the passage of Act No. 264, Pub. Acts 1905, operated as an acceptance of the offer contained in the statute without a formal notification of the acceptance and created a binding contract with the State.

Appeal from Ingham; Wiest, J. Submitted April 9, 1914. (Docket No. 9.) Decided December 19, 1914. Rehearing denied April 28, 1915.

Bill by the city of Lansing against the Michigan Power Company for an injunction and other relief. From a decree for defendant, complainant appeals. Affirmed.

*Joseph H. Dunnebacke* (*A. M. Cummins* and *L. B. McArthur*, of counsel), for complainant.

*Keena, Lightner, Oxtoby & Oxtoby* (*Charles F. Hammond* and *Charles E. Pain*, of counsel), for defendant.

STONE, J. The material and controlling facts and legal questions involved in this case were so clearly stated and discussed in the opinion filed by the learned circuit judge, who heard and decided the case at the circuit, that we have concluded to insert his opinion here. It is as follows:

"The bill of complaint herein is filed by the city of

Lansing to compel the defendant to remove from the public streets the poles and wires and equipment installed therein by defendant for the purpose of transmitting electricity for power and lighting purposes.

"The city of Lansing has a municipal electric plant and sells electric light and power, and the defendant has an electric plant in the city and sells light and power, and both complainant and defendant use the public streets for the setting of their poles, the stringing of wires along them, and the other necessary equipment, for transmitting electricity to consumers. Each plant represents the expenditure of large sums of money, and defendant's plant would be practically valueless without the use of the streets.

"The city claims that defendant's only right to ever be upon the streets at all arose out of a franchise granted by the city to defendant's predecessor and assignor, and that such franchise has expired by reason of its terms of limitation, and therefore the defendant is upon and using the streets without right and should be removed therefrom.

"Defendant claims that it is using the streets under the grant of the legislature, contained in Act 264, Public Acts of 1905.

"The franchise granted by the city to the predecessor and assignor of defendant has expired by reason of its terms of limitation, so there can be no claim made by defendant of any existing right by franchise from the city. It is claimed by the city that the use of the streets by defendant under that franchise and before the passage of the act of 1905 made all use of the streets, while such franchise was in force, even though after the passage of the act of 1905, a use wholly under the franchise, and that it is not now open to defendant, in the absence of an express negation of use under the franchise at the time to make the claim of right under the law of 1905. This claim of the city implies that the franchise constituted the sole authority for the use of the streets by defendant, and that, while the franchise was in existence, no other authority could be accepted, though open to all persons and corporations not having a franchise from the city. This position is untenable, for the city had no authority to grant the use of the streets for the setting of poles and the stringing of wires, except as it derived

authority by grant of power from the legislature, and a grant of such authority by the legislature in no way lessened the sovereign power of the legislature to also grant the right to individuals and corporations within the city, and to do so regardless of any action by the city.

"The city of Lansing had authority from the legislature to grant the franchise in question, but this grant of authority in no way prevented the legislature from granting the right to all persons, and the franchise did not estop defendant from having the benefit of a general law of the State. *Wisconsin Telephone Co.* v. *City of Oshkosh*, 62 Wis. 32 [21 N. W. 828]; *Abbott* v. *City of Duluth* [C. C.], 104 Fed. 833; *Northwestern Telephone Exchange Co.* v. *Minneapolis*, 81 Minn. 140 [83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175]; *City of Duluth* v. *Telephone Co.*, 84 Minn. 486 [87 N. W. 1127].

"Act 264, Public Acts of 1905, provides:

"'Any person, firm, or corporation authorized by the laws of this State to conduct the business of producing and supplying electricity for purposes of lighting, heating and power, and which shall be engaged or which shall hereafter desire to engage in the business of the transmission of such electricity, shall have the right to construct and maintain lines of poles and wires for use in the transmission and distribution of electricity on, along or across any public streets, alleys and highways and over, under or across any of the waters of this State, and to construct and maintain in any such public streets, alleys or highways all such erections and appliances as shall be necessary to transform, convert and apply such electricity to the purposes of lighting, heating and power, and to distribute and deliver the same to the persons, firms and public or private corporations using the same: *Provided*, that the same shall not injuriously interfere with other public uses of such streets, alleys or highways, or with the navigation of said waters, and that the designation and location of all lines of poles and wires shall be subject to the regulation, direction and approval of the common council of cities, the village council of villages, and the township board of townships, as the case may be: *Provided*, that this act shall not apply to the county of Wayne: *Provided further*, that nothing herein shall deprive cities, villages or townships of the power and control over their streets and highways, which they have by the general laws of this State.'

"The act of 1905 granted to defendant, as well as to all others, the right to use the streets for the purposes of promoting and making possible public utility service, and, when defendant made use of such grant, it was not necessary for it to disclaim user under the franchise from the city, for the franchise and the act of 1905 were not at all inconsistent in purpose and scope.

"The city makes the point that the legislative journals for the session of 1905 do not show that Act 264 was passed in accordance with the law governing legislative bodies. It is sufficient answer to this to say that the legislative journals do not show the act to have been irregularly enacted, and as the presumption of law is in favor of regularity in the premises, until irregularity is made affirmatively to appear, the presumption defeats the point so raised.

"Complainant claims the grant of the use of the streets by the legislature was subject to repeal and has been repealed or abrogated by the provisions of the Constitution of 1909, while defendant insists that the grant is perpetual and has not been and cannot be repealed. Both parties are in part mistaken. Defendant's right to the use of the streets under Act 264 is not perpetual.

"The legislature of 1905 had authority to grant the use of the streets and public highways, whether in cities or in the country, to public utility corporations, with or without restriction of time of enjoyment, and the legislature at that session, either purposely or thoughtlessly, made the grant without fixing any period of enjoyment. This court must assume that the legislature was aware of the law upon the subject of that kind of grant, and the court is powerless in the premises, and cannot supply or fix any period of the time of enjoyment, except that of the life of the corporation. It was not necessary for the legislature to fix the period of the enjoyment of the grant of use of the streets, unless it was desired to limit the enjoyment to a less period than the life of the corporation. In the absence of a declaration of a period during which the right might be enjoyed, it is the law in this State that it may be enjoyed for the period of the statutory life of the corporation.

"It is absurd to claim that the general grant of the

use of the streets, in the act of 1905 gave defendant the perpetual right to stay upon the streets, for defendant itself is not of perpetual life; its end is fixed with certainty in the act under which it is created.

"Defendant has a possible life of 30 years from the time of its incorporation, and this statutory corporate life, if lived, is the period of the right to use the. streets. Counsel for defendant cite the case of *People v. O'Brien*, 111 N. Y. 1 [18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684], as authority for claiming that the grant is perpetual. The *O'Brien Case* is not authority in this State and will not be followed by this court. That case is an isolated one and in conflict with the holdings of the Supreme Court of the United States and wholly without the weight of authority, and it is surprising that it should be cited to this court in the case at bar.

"It is well to remember at all times when the *O'Brien Case* is cited that 'the title of the streets in the city of New York is in the city itself, and not, as is the general rule, in the abutting owners who hold their title subject to the right of easement in the public for the purposes of transportation and communication.' Pond on Public Utilities, § 171.

"The authority of the *O'Brien Case* cannot be invoked in Michigan, for the reason that in this State no franchise can grant a perpetual easement in the streets, for no corporation capable of enjoying such franchise can be organized under the law with perpetual life.

" 'That the grant will be limited to the life of the grantee or to the period of its existence as fixed in its charter was first established by the Supreme Court of the United States in the case of *St. Clair County Turnpike Co.* v. *People of Illinois*, 96 U. S. 63, where the court compared the grant of the franchise to the grant of an estate in land, and by analogy held that the period of the grant, like the giving of a life estate in real estate, terminated with the life of the grantee, in the absence of anything in the grant fixing a period definitely.'

"The court said:

" 'At common law a grant to a natural person, without words of inheritance, creates only an estate for the life of the grantee, for he can hold the property no longer than he himself exists.

By analogy to this, a grant to a corporation aggregate, limited as to the duration of its existence, without words of perpetuality being annexed to the grant, would only create an estate for the life of the corporation.'

"Pond on Public Utilities, § 180. This is the rule in Michigan. *Electric Light Co.* v. *City of Wyandotte,* 124 Mich. 43 [82 N. W. 821].

"Complainant urges that, under the power reserved in the Constitution of 1850, the act of 1905 was subject to revocation and was revoked by the provisions of the Constitution of 1909, and upon such revocation all rights granted in the act of 1905, whether accepted by user of the streets or not, were at once taken away.

"Section 1 of article 15, Constitution of 1850, provides:

"'Corporations may be formed under general laws; but shall not be created by special act, except for municipal purposes. All laws passed pursuant to this section may be amended, altered, or repealed.'

"This power reserved in the Constitution of 1850 cannot be construed to be a power to revoke and terminate public utility service contracts arising out of user of the streets under the act of 1905, for such user constitutes a contract falling within the protection of the Federal Constitution.

"The reports are full of cases interpreting the power of the legislature to amend or repeal acts authorizing incorporation when the power to do so has been reserved in the Constitution, but the weight of authority is to the effect that when the legislature has granted the right to use the streets for public utility purposes, and such grant has been accepted by user involving great expense and made upon the faith and credit of the grant, the legislature may not turn round and revoke the grant and ruin the party so relying upon the contractual force of the grant and user. Such grants, when accepted by the user, have a value to the public, in providing a common public service of a necessary utility and a value to the company in the returns from consumers for the service furnished, and constitute contracts within the protection of the Federal Constitution.

"It has been said that the power to revoke was placed in the Constitution of 1850 to avoid the effect of the decision in the *Dartmouth College Case*, because the framers of that Constitution were well aware of the binding force of legislation in the absence of such reserved power. This is undoubtedly true, but the power so reserved serves a valuable purpose without carying it to the extent of impairing the obligation of contracts.

"It is well to keep in mind the distinction between the right to be a corporation and unilateral grants to corporations and contracts between the State and corporations. The corporate existence and functions and unilateral grants to corporations may fall within the reserved power of amendment or revocation, but contracts between the State and corporations, arising out of grant of right of user of the streets, and acceptance by user for public utility purposes, must run their course and are not subject to revocation at the will of the legislature.

"The Constitution of 1909, art. 12, § 1, provides:

" 'All laws heretofore or hereafter passed by the legislature for the formation of, or conferring rights, privileges or franchises upon corporations and all rights, privileges, or franchises conferred by such laws may be amended, altered, repealed or abrogated.'

"This constitutional provision is prospective in its operation and for the use of the legislature.

"The legislature has not repealed the act of 1905. It is claimed that the act of 1905 has been abrogated or repealed by section 28, art. 8, of the Constitution of 1909, which provides:

" 'No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships.'

"This provision of the Constitution is a wise and

radical change in the policy of exercising the sovereign power over the streets, and upon its adoption it at once superseded the act of 1905 and rendered that act from that time inoperative.

"The Constitution of 1909 did not revoke and terminate existing user of the streets under Act 264 of 1905. The Constitution did abrogate the law of 1905, but it did not and could not revoke existing contracts under that act arising out of beneficial user of the streets for public utility purposes.

"Constitutional provisions, as well as legislative enactments, must be held prospective in operation only, unless they carry upon their face an intention to be retrospective.

"It would not help, however, to hold the constitutional provision retrospective, for the reason that contract rights are not subject to impairment by later constitutional provisions any more than by legislative enactments.

"Mr. Pond in his work on Public Utilities, § 115, says:

"'Nor can contract rights and interests that are vested by virtue of installing public utility plants under such rights be destroyed or interfered with even by a constitutional provision of the State. The rule prohibiting the impairment of contract rights is based on the Federal Constitution, which is superior to the State Constitution as well as to a statute or ordinance.'

"In the case of *New Orleans Gas Light Co.* v. *Manufacturing Co.,* 115 U. S. 650 [6 Sup. Ct. 252], decided in 1885, the court held that a constitutional provision against the granting of monopolies or exclusive privileges did not have the effect of destroying or impairing the special privilege of conducting such a monopoly and enjoying an exclusive privilege by virtue of a franchise granted and accepted prior to the constitutional provision; the court saying:

\* \* \* "'The article in the State Constitution of 1879, in relation to monopolies, is not in any legal sense an exercise of the police power for the preservation of the public health or the promotion of the public safety. \* \* \* The monopoly clause only evinces a purpose to reverse the policy, previously pursued, of granting to private corporations franchises accom-

panied by exclusive privileges, as a means of accomplishing public objects. That change of policy, although manifested by constitutional ,enactment, cannot affect contracts which, when entered into, were within the power of the State to make, and which consequently were protected against impairment, in respect of their obligation, by the Constitution of the United States. A State can no more impair the obligation of a contract by her organic law than by legislative enactment, for her Constitution is a law, within the meaning * * * of the national Constitution. * * * And the obligation of her contracts is as fully protected by that instrument against impairment by legislation as are contracts between individuals exclusively.'

"The city contends that the grant of the right to use the streets, in the act of 1905, is a mere license and not in the nature of a franchise which could become a contract upon acceptance by user. In granting the use of the streets for public utility purposes, the legislature recognized the public purpose to be subserved through such use. The legislature tendered the use of the streets for public utility purposes to such individuals and corporations as would provide the public with a necessary utility service, knowing that the creation of such a utility and its service would entail the expenditure of large sums of money and benefit the public by providing a common service of the utility, knowing also that as soon as it should be installed in the public streets it would become affected with a public interest, and that its owner would have to surrender the right to serve whom and where it willed, or to charge as it willed, and that it would become subject to the laws regulating public service corporations. This public interest, this right of regulation, and this public advantage constitute a valuable consideration for the use of the streets and remove the grant from the class of a mere license.

"As soon as defendant accepted the grant by installation of its utility service and furnished its product to consumers, it had the right to charge and receive a reasonable sum for such service, and such right is its consideration for the contract.

"The act of 1905 tendered a franchise to defendant; such franchise was accepted by defendant by way of installing its service equipment in the public streets

and providing a service of a public utility; and this tender and acceptance constitute a contract between the State and defendant beyond the power of the legislature, the Constitution, or of this court to impair by destroying the contract right to remain in the streets.

"It is true that it is not every act of the legislature providing for incorporation or relating to corporate rights and privileges that will constitute a contract, but when the legislature by act invites a public utility corporation to expend money in establishing a plant, upon the grant of the right to use the public streets, then, upon accepting the grant and establishing the plant and installing the public service equipment in the streets, there has come into existence a contract beyond the power of any division of the government to impair by recall of the grant to be upon the public streets.

"It is further contended by complainant that the act of 1905 is unconstitutional because it excepts Wayne county from its provisions and thereby violates section 1 of article 15 of the Constitution of 1850, which provides:

" 'Corporations may be formed under general laws; but shall not be created by special act, except for municipal purposes.'

"Passing a strict construction of this language in the Constitution of 1850, and considering it as applicable to legislation granting corporate rights and privileges, does the excepting of Wayne county from the operation of the act render the legislation special, so far as corporations are concerned, and therefore unconstitutional?

"The act may appear to be local (that is, less than general to the whole State) and yet not be special, within the meaning of the constitutional prohibition. Acts granting rights and privileges to corporations within a particular part of the State have been held not to offend against this constitutional provision.

"The legislature, under the Constitution of 1850, had sovereign authority over the public streets and highways of the State, and could grant cities power to exercise the authority locally, and what the legislature could grant to a locality known as a city to do, it could within the same territory grant direct to individuals

and corporations for public utility purposes, saving the rights of public user of the streets and the exercise of the police power. The act of 1905 cannot be held to have offended against the provision of the Constitution of 1850.

"Complainant is not entitled to the relief asked, and the bill is dismissed."

It might be well to refer briefly to the claim of complainant's counsel that Act No. 264 of the Public Acts of 1905 (2 How. Stat. [2d Ed.] § 2941), was not legally passed by the legislature and is therefore void.

The bill originated in the house, and no claim is made that it did not legally pass that body. It was sent to the senate and referred to the committee on mechanical interests. Later the bill was reported out by the said committee and referred to the committee of the whole. On the same day the bill came up in the committee of the whole, and the journal shows that there "sundry amendments" were made to the bill, which amendments were concurred in, and the bill placed on the order of third reading. The nature of such amendments does not appear. On the same day the bill came up on third reading, was read a third time, and passed, a majority of all the senators-elect voting therefor, and the bill given immediate effect. Later on, in the same day, it was moved to reconsider, and upon such motion prevailing, and the question being on the passage of the bill, it was moved that the words "Kent" and "Saginaw" appearing after the word "Wayne" be stricken out. It was also moved that the bill be amended by striking out the word "counties" and inserting in lieu thereof the word "county." These amendments being adopted, and the question being again on the passage of the bill, the bill as thus amended was passed, a majority of all the senators-elect voting therefor, and the bill given immediate effect. It does not appear at this point in the journal whether the striking out and changing of the

above words amounted to an amendment of the original house bill or was an amendment of the bill as reported by the senate committee of the whole. The language of the journal would probably be the same in either case. If it was the latter, it amounted to no more than undoing the work of the committee, and left the bill as it came from the house. If that were all that appeared, we might invoke the doctrine that doubts and ambiguities on the face of the journal should be resolved in favor of due and proper legislative action. However, there is further evidence on the subject. The following entries are found in the house journal:

"Messages were received from the Secretary of the Senate, informing the House that the Senate had concurred in the passage of the following entitled bills: House Bill No. 166 (file No. 268) (giving the title of this bill). And that the Senate had also concurred in the action of the House in ordering the bills to take immediate effect."

It thus appears on the face of the journal that the senate concurred with the house in passing this bill. Had there been amendments to the bill, on its final passage, the senate would have made a different report, for it appears in the house journal on the second page from the above entry that a different form of communicating the passage of bill with amendments was used. A proper reference of the bill for printing was then made, and it was later duly presented to the governor.

In *Common Council of Detroit* v. *Board of Assessors,* 91 Mich. 78, at page 84 (51 N. W. 787, 16 L. R. A. 59), Justice MONTGOMERY quoted the following language from *McCulloch* v. *State,* 11 Ind. 424, referring to such records:

"This journal must be held conclusive evidence of the facts which appear on its face, because it must be presumed that the members as a body inspected it

and made all necessary corrections before they allowed it to assume the character of a journal of their proceedings."

Counsel for complainant urge that *People* v. *Dettenthaler*, 118 Mich. 595 (77 N. W. 450, 44 L. R. A. 164), should govern this question. We cannot agree with counsel in this claim, but agree with the conclusion of the circuit judge.

It is the further contention of counsel that the act of 1905 was an infringement of the Constitution of 1850, because the legislature was by that instrument prohibited from creating corporations by special act, and it is urged that, because the act excluded Wayne county from its provisions, it was local, and therefore special. Our first answer to this contention is that, in our opinion, it cannot be said that this act attempted to create a corporation. At the furthest, it undertook to confer upon and grant to persons, firms, and corporations engaged in, or that might thereafter engage in, the manufacture, transmission, and distribution of electricity for lighting, heating, and power purposes the use of the public streets, highways, and alleys of the State, except in Wayne county. Provided that the same should not injuriously interfere with other public uses of such streets, highways, or alleys, leaving the designation and location of all such lines subject to the regulation, direction, and approval of the common council of cities and villages and the township board of townships, as the case might be, and that nothing in the act should deprive those municipalities of the power and control over their streets and highways, which they had by the general laws of the State. We think that it may be said that the exception extends to and covers any legislation affecting the rights, privileges, immunities, or burdens of the municipalities of the State.

The defendant was organized under the provisions of Act No. 232 of the Public Acts of 1903, and not

under the act of 1905.   As was said by the supreme court of California in *California State Telegraph Co.* v. *Telegraph Co.,* 22 Cal. 398:

"It is clear that the Constitution prohibits the legislature from 'creating' corporations by special act, except for municipal purposes; and it is equally clear that this prohibition extends only to their 'creation.' There is nothing in the language used which either directly or impliedly prohibits the legislature from directly granting to a corporation, already in existence and created under the general laws, special privileges in the nature of a franchise, by a special act, or prohibiting a corporation from purchasing or holding such franchise, which may have been granted to others."

We are aware that in *City of San Francisco* v. *Waterworks,* 48 Cal. 493, the above decision was overruled by a divided court.   But in *People* v. *Stanford,* 77 Cal. 360 (18 Pac. 85, 19 Pac. 693, 2 L. R. A. 92), the *San Francisco Case* was much modified in holding that a corporation might legally take and hold franchises specially granted to individuals, and afterwards assigned to the company, and thus in effect limiting the meaning of the word "create" to the formation of corporations rather than to the subsequent acquisition of rights and privileges.   It should be borne in mind that we are here dealing with the Constitution of 1850 and not with the provisions of our present Constitution.   The former did not require uniformity of legislation.

"Laws public in their objects may, unless express constitutional provision forbids, be either general or local in their application."   Cooley's Constitutional Limitations, p. 554.

See, also, *White* v. *Bracelin,* 144 Mich. 332 (107 N. W. 1055, 8 Am. & Eng. Ann. Cas. 256); *Maclam* v. *City of Marquette,* 148 Mich. 480 (111 N. W. 1079); *Woodmere Cemetery* v. *Roulo,* 104 Mich. 595 (62 N. W. 1010); *Attorney General* v. *Arnott,* 145 Mich. 416

(108 N. W. 646); *Attorney General* v. *McArthur*, 38 Mich. 204.

We have examined many cases upon the subject of general, special, and local legislation, but we do not deem it necessary to cite them here, for we do not think that question a pertinent one in this case. The constitutional provision which we are considering was aimed at the practice of granting special acts of incorporation.

After examining the many authorities cited by counsel, we are satisfied that the provisions of the new Constitution, cited and referred to in the briefs and arguments, are prospective in their operation. The rule is well stated in volume 6, Am. & Eng. Enc. Law (2d Ed.), at page 917, as follows:

"Constitutions are construed to operate prospec; tively only, unless on the face of the instrument a contrary intention is manifest beyond reasonable question."

See, also, the many cases there cited. The same rule is applied to statutes.

As to the nature and extent of defendant's right to use the streets under the act of 1905, it is only necessary, in the light of the uncontradicted evidence as to acceptance and occupancy by defendant, to cite a few cases, State and Federal, in addition to those cited by the circuit judge. *City of Detroit* v. *Plank Road Co.*, 43 Mich. 140 (5 N. W. 275); *Attorney General* v. *Perkins,* 73 Mich. 303 (41 N. W. 426); *Commonwealth* v. *Essex County*, 13 Gray (Mass.), 253; *Fletcher* v. *Peck*, 6 Cranch (U. S.), 87; *Sinking Fund Cases*, 99 U. S. 700.

In a very able opinion by Justice Hughes, in the case of *Russell* v. *Sebastian*, 233 U. S. 195 (34 Sup. Ct. 517), handed down by the Supreme Court of the United States on April 6, 1914, the following pertinent language is used:

"That the grant, resulting from an acceptance of the State's offer, constituted a contract, and vested in the accepting individual or corporation a property right, protected by the Federal Constitution, is not open to dispute in view of the repeated decisions of this court. *New Orleans Gas Co.* v. *Light Co.*, 115 U. S. 650-660 (6 Sup. Ct. 252); *New Orleans Water Works Co.* v. *Rivers*, 115 U. S. 674-680, 681 (6 Sup. Ct. 273); *Walla Walla* v. *Walla Walla Co.*, 172 U. S. 1-9 (19 Sup. Ct. 77); *Louisville* v. *Telephone Co.*, 224 U. S. 649, 663, 664 (32 Sup. Ct. 572); *Grand Trunk R. Co.* v. *South Bend*, 227 U. S. 544, 552 (33 Sup. Ct. 303, 44 L. R. A. [N. 'S.] 405); *Owensboro* v. *Telephone Co.*, 230 U. S. 58-65 (33 Sup. Ct. 988); *Boise Water Co.* v. *Boise City*, 230 U. S. 84, 90-91 (33 Sup. Ct. 997); Dillon on Municipal Corporations (5th Ed.), § 1242."

The above-cited opinion by Justice Hughes is worthy of a careful examination on the main question involved in this case. There the defendant was working in the employ of a company, organized in 1909, claiming vested rights under the Constitution of California, as amended in 1885. It was claimed that the rights of the company had been taken away by an amendment of the Constitution in 1911. There had been no formal or written acceptance of the offer, under the Constitution as amended in 1885, but it was held that the lack of a requirement of an acceptance of a formal character did not preclude acceptance in fact. There, also, the right was given to "any individual or any company duly incorporated for such purpose, under and by authority of the laws of this State."

It has been urged that the case of *Attorney General* v. *Looker*, 111 Mich. 498 (69 N. W. 929, 56 L. R. A. 947), modified the case of *City of Detroit* v. *Plank Road Co., supra.* We do not so understand it. In the later case it was distinctly held that stockholders of a corporation had no vested right to elect directors,

183 Mich.—27.

which was infringed by the stockholders' minority law. The doctrine of the case is that the power reserved to the legislature by the Constitution of 1850, art. 15, § 1, to amend or alter the charters of corporations, authorizes any reasonable amendment, regulating the mode in which the franchise granted shall be used and enjoyed, which does not defeat or essentially impair the object of the grant, or take away property or rights which have become vested under a legitimate exercise of the powers granted.

We agree with counsel for defendant that it is immaterial to the consideration of this case whether the grant was for the life of the corporation or in perpetuity. The circuit judge took the view that the grant was for the life of the corporation. We do not pass upon that question. In all other respects we concur in the conclusions of the circuit judge, and the decree below dismissing the bill of complaint is affirmed, with costs to the defendant.

MCALVAY, C. J., and BROOKE, KUHN, BIRD, MOORE, and STEERE, JJ., concurred. OSTRANDER, J., did not sit.