MICHIGAN RY. CO. v. CITY OF LANSING et al.

(District Court, E. D. Michigan, S. D.　May 24, 1919.)

No. 283.

1. EQUITY ☞363—MOTION TO DISMISS—EFFECT.
　　On motion to dismiss a bill in equity, the truth of allegations of fact in the bill is admitted.

2. COURTS ☞282(1)—FEDERAL COURTS—JURISDICTION.
　　The federal court has jurisdition of a bill by a street railway company to restrain a city from enforcing the terms of a franchise ordinance fixing the rates of fare to be charged, where relief was sought on the ground of alleged substantial rights arising under the federal Constitution.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3.** CARRIERS ⬅12(9)—RATES—PROVISIONS OF FRANCHISE.

Where a street railway company accepted a franchise, the terms of which fixed the rate of fare to be charged, the company is not entitled to have the municipality enjoined from enforcing the franchise rate on the theory that increased operating costs rendered the rate confiscatory, and that to require it to operate its cars at such rate would deprive it of its property without due process of law, deny it the equal protection of the laws, and force it into financial ruin.

**4.** CONSTITUTIONAL LAW ⬅135—OBLIGATIONS OF—FRANCHISE—RATES OF FARE—"CONTRACT."

A franchise fixing the rates of fare to be charged, which was duly accepted by a street railway company, is a "contract," and neither the state nor any of its agencies may impair the obligations thereof.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contract.]

**5.** CARRIERS ⬅12(9)—FRANCHISES—RATES OF FARE.

Under Comp. Laws Mich. 1915, § 8551, under which the predecessor of plaintiff street railway company was organized, and which provides that the rates of fare shall be established by agreement between the company and the corporate authorities of the city where the road is located, and shall not be increased without the consent of such authorities, after a city had granted a franchise fixing rates, and adopted a charter under the so-called Home Rule Act which provides that no public utility franchise can be granted, renewed, altered, or amended without the same having been submitted to the electors of the city, held, that the city council was without authority to approve even a temporary increase in fares.

**6.** CARRIERS ⬅12(9)—FRANCHISES—RATES OF FARE.

As Comp. Laws Mich. 1915, § 8551, under which the predecessor of plaintiff street railway company was organized, prohibits the increase of fares without the consent of the corporate authorities, the provision in a charter adopted under the Home Rule Act by a city which had granted a franchise that no charter of any public utility should be amended, altered, or extended without submission of the matter to the electors, did not deprive plaintiff of any rights which it had under the former franchise and statute.

**7.** CARRIERS ⬅12(9)—FRANCHISES—RATES OF FARE.

Where the council of a city authorized a street railway company to temporarily increase its fares, but the consent was merely a conditional consent, and expressly subject to ratification at any time, it might be revoked by the council, and is no authority for charging increased fares, where such consent was in excess of the powers of the council.

In Equity. Bill by the Michigan Railway Company against the City of Lansing and others. On motion to dismiss the bill. Motion granted.

Warren, Cady, Ladd & Hill, of Detroit, Mich., for plaintiff.
Rhoads & Reynolds, of Lansing, Mich., for defendants.

TUTTLE, District Judge. This cause is before the court on a motion by the defendants to dismiss the bill of complaint for lack of jurisdiction and for lack of equity. The bill was filed by the Michigan Railway Company, a Michigan corporation, which operates, under a franchise from the city of Lansing, Mich., a street railway system in said city, to restrain the latter from enforcing those terms of such franchise which fix the rate of fare to be charged by the plaintiff

on its said street railway system, and for the purpose of obtaining from this court the right to charge a higher rate of fare than that fixed in said franchise.

In 1905 the city of Lansing granted to the predecessor in title of the plaintiff the franchise in question. This franchise provided for a definite rate of fare. At the time of the granting of this franchise, section 20 of the .act under which the plaintiff's predecessor was organized, being section 8551, Michigan Compiled Laws of 1915, provided as follows:

"The rates of toll or fare which any street railway company may charge for the transportation of persons or passengers ever their road, shall be established by agreement between such company, and the corporate authorities of the city or village where the road is located, and shall not be increased without consent of such authorities."

In 1909 the Legislature of the state of Michigan provided in the so-called Home Rule Law, that cities such as Lansing might revise or amend their charters. Pub. Acts 1909, No. 279. In 1912 the said city adopted, under said act, a new charter, wherein it is provided that no public utility franchise can be granted, renewed, extended, altered, or amended without the same having been first submitted to the electors of the city and adopted by a three-fifths vote of the voters voting thereon, at a regular or special election.

During the summer of 1918 the plaintiff petitioned the common council of said city for the right to charge an increased rate of fare, for the reason that the war had caused such an increase in the cost of labor and materials as to make it impossible for it to much longer continue to operate its cars at the rate of fare fixed in the aforesaid franchise. Thereupon the said common council approved a temporary increase in such rate of fare, expressly reserving the right to revoke such approval at any time, and further stating that such approval was not to be construed as affecting the rights of the city or of the company in the franchise in question. On November 18, 1918, the city council passed a resolution, rescinding and revoking said approval.

Shortly thereafter plaintiff filed this bill, alleging that if it should be compelled to operate its street cars under the rate of fare fixed in its franchise, it would be deprived of its property without due process of law, as such rate was, under the then existing conditions affecting the cost of labor and material necessary to the operation of its cars, confiscatory and unreasonable, and it would therefore be deprived of its property without due process of law, and it would be denied the equal protection of the laws, contrary to the United States Constitution, and that it would thereby suffer irreparable loss and damage. It alleged that it must have relief from the unreasonable and confiscatory rates prescribed in its franchise, or else face financial ruin. As already stated, the defendants have filed their motion to dismiss such bill.

[1] Admitting, as the court must on this motion, the truth of allegations of facts in the bill to the effect that, owing to the extraordinary financial conditions existing at the time of the filing of the bill,

to hold the plaintiff to the terms of its franchise would be a severe hardship upon it and even cause it financial disaster, is the plaintiff entitled to have its rights under such franchise modified by this court herein, so as to virtually change the terms of its franchise, against the objection of the defendant city?

[2] The contention of the defendants that the court is without jurisdiction in the premises is clearly untenable, and must be overruled, as the plaintiff bases its claim to relief upon alleged substantial rights arising under the United States Constitution, and under a similar situation the same contention was made and overruled in the case of Columbus Railway Power & Light Co. v. City of Columbus, 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669, decided by the Supreme Court of the United States April 14, 1919.

[3] Nor is it necessary to discuss the interesting question, so ably argued, as to the right of plaintiff to the relief sought under the circumstances set forth in its bill, for the reason that the same question has just been definitely decided by the United States Supreme Court in the case last above cited. In that case the material facts were substantially the same as those in the present case, and the same contention was made by the public utility company against the city as is made by the plaintiff against the defendants herein. The District Court held in favor of the plaintiff, granting the relief prayed. On appeal, however, to the United States Supreme Court, the latter reversed the decree of the lower court, and overruled the contention advanced by the plaintiff here.

That case is applicable and controlling here, and renders it unnecessary and profitless for me to discuss the subject further.

[4] Plaintiff lays considerable stress upon the power of the state through its proper officials to fix reasonable rates for public utilities from time to time, and cites numerous cases in support of its argument along that line. Such argument and cases, however, are inapplicable to the present case, for the reason that here no showing is made that the state, through any of its agencies, has attempted to fix or regulate such rates. Furthermore, the franchise involved here is a contract, and it is elementary that neither the state nor any of its agencies may, by constitutional provisions or by other laws, impair the obligations of such a contract. New Orleans Gaslight Co. v. Louisiana Light & Heat Producing & Manufacturing Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; Detroit United Railway v. Michigan, 242 U. S. 238, 37 Sup. Ct. 87, 61 L. Ed. 268; Lansing v. Michigan Power Co., 183 Mich. 400, 150 N. W. 250.

[5-7] One further consideration may be mentioned. It is urged by plaintiff that, as the act under which this franchise was granted contains the provision already quoted prohibiting any increase in the rate of fare without the consent of the "corporate authorities of the city or village where the road is located," and as the common council of Lansing approved a temporary increase in the rate of fare on the plaintiff's street railway system, therefore said council was without authority to revoke such approval, apparently on the ground that such revocation was an attempt to change the terms of the agreement be-

tween itself and the defendant city as modified by the change in fare made in the summer of 1918 with the consent of both parties. I am satisfied that this contention is without merit for two reasons:

In the first place, it seems plain that under the provision of the revised charter previously alluded to, prohibiting the grant, renewal, extension, alteration, or amendment of any public utility franchise, unless adopted by the voters of the city in the manner prescribed in said provision, the common council, after the adoption of such charter, was without power to amend the franchise in question, even temporarily in the manner in which it attempted to do, by what it called its "approval" to a temporary change therein. I fail to see wherein this provision of the revised charter impairs the obligation of any contract then existing. It merely changed the method of renewing, extending, altering or amending public utility franchises, like that involved herein.

I am unable to perceive wherein any rights granted to plaintiff by the statute relied on by it, prohibiting the increase of rates of fare without consent of the "corporate authorities," are taken away by the section of the charter just quoted. The statute was not an enlargement of, but rather a limitation upon, the rights of companies like the plaintiff. It prevented such a company from increasing its rates without the consent of such authorities. The precise mode of giving such consent and the officials having authority in the premises were obviously not within the contemplation of the Legislature. The section of the charter referred to does not in any way purport to amend or abrogate such statute, but merely prescribes the mode in which, and the authorities by whom, such consent shall be given.

Aside, however, from the foregoing consideration, the consent of the common council obtained by the plaintiff to the temporary increase of its fares was, on its face, merely a conditional consent, and expressly subject to revocation at any time. So far, therefore, as plaintiff invokes such consent, it invokes merely a conditional consent, revocable at will, and cannot complain of the revocation, the right to which was expressly attached, by the common council, to such conditional consent.

The motion to dismiss the bill on the ground that upon its face it shows want of equity must be granted, and a decree will be entered to that effect.