MICHIGAN BELL TELEPHONE COMPANY v CITY OF DETROIT

Docket No. 45515. Submitted January 6, 1981, at Detroit.—Decided June 3, 1981. Leave to appeal applied for.

The Michigan Bell Telephone Company brought an action against the City of Detroit seeking compensation for certain easements located in streets and alleys ordered vacated by resolution of the Detroit Common Council for construction of a sewage treatment facility. Both parties moved for summary judgment. Following a hearing, Wayne Circuit Court, Peter B. Spivak, J., granted plaintiff's motion. Defendant appeals. *Held:*

The lower court erred in granting plaintiff's motion. The common-law rule requiring a utility to remove its facilities at its own expense where necessary to protect the public health or general welfare applies. Defendant was not obligated to reimburse plaintiff for expenses of relocation.

Reversed.

1. PUBLIC UTILITIES — TELEPHONE COMPANIES — FRANCHISES — STATUTES.

A telephone company has statutory authority to construct telephone lines along public streets, and this franchise from the Legislature is separate from and in addition to any franchise granted by the local municipality in which the utility operates (MCL 484.1 *et seq.;* MSA 22.1411 *et seq.*).

2. PUBLIC UTILITIES — TELEPHONE COMPANIES — FRANCHISES — CONTRACTS — CONSTITUTIONAL LAW — STATUTES.

A franchise to construct telephone lines along public streets granted to a telephone company by the Legislature where accepted by the company becomes a contractual right protected by the Fourteenth Amendment for the life of the utility corporation (MCL 484.1 *et seq.;* MSA 22.1411 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 74 Am Jur 2d, Telecommunications §§ 9, 18, 19.
[5, 6] 40 Am Jur 2d, Housing Laws and Urban Redevelopment § 25.
[6] 74 Am Jur 2d, Telecommunications § 18.

3. PUBLIC UTILITIES — LOCAL GOVERNMENTS — REGULATION.

> Local governments have no inherent power to regulate public utilities; any power to regulate public utilities must be expressly granted by the state constitution, statutes, or a municipal charter.

4. PUBLIC UTILITIES — LOCAL GOVERNMENTS — REGULATION.

> Regulation of a public utility by a local government is valid and constitutional where authorized, reasonable, and related to public health, safety, or general welfare, the possession by the utility of a valid state franchise notwithstanding.

5. PUBLIC UTILITIES — LOCAL GOVERNMENTS — URBAN RENEWAL — COSTS OF RELOCATION.

> A local government which requires a telephone utility company to relocate its equipment to make way for an urban renewal project must bear the costs of relocation.

6. PUBLIC UTILITIES — LOCAL GOVERNMENTS — PUBLIC HEALTH AND WELFARE — COSTS OF RELOCATION.

> The right of a public utility to use public streets is subordinate to the right of local government to require relocation of its facilities at the expense of the utility where necessary pursuant to considerations of public health and welfare.

*Kaufman, Roche & Ward, P.C.,* and *Donald E. Brown, Jonathan P. Macks,* and *Albert Calille,* for plaintiff.

*George G. Matish,* Acting Corporation Counsel, and *Joseph N. Baltimore* and *Hilda H. Hirata,* Assistants Corporation Counsel, for defendant.

Before: T. M. BURNS, P.J., and R. M. MAHER and D. C. RILEY, JJ.

T. M. BURNS, P.J. The defendant City of Detroit comes before this Court appealing an April 27, 1979, lower court order granting summary judgment in favor of plaintiff on stipulated damages of $276,126.45. We reverse.

On September 4, 1970, and July 13, 1973, the Detroit Common Council passed two resolutions

that vacated certain streets in the City of Detroit for construction of a sewage treatment facility. On the streets and alleys that were to be vacated pursuant to these resolutions, plaintiff, Michigan Bell, owned several facilities.

On May 26, 1974, plaintiff filed a complaint in the Wayne County Circuit Court and claimed that defendant had to condemn and compensate Bell for the easements that it owned on the vacated streets and alleys. The damages as stated were later stipulated by defendant. In a May 28, 1978, relocation agreement, plaintiff agreed to move its facilities but without prejudice to its suit for reimbursement from the defendant for the cost of doing so.

On April 13, 1979, the Wayne County Circuit Court ruled that plaintiff did have a vested property right in the easements that it owned on the vacated streets and alleys. It was further found that plaintiff had not only a property right in these easements for its facilities, but that it also had a contractual right which defendant could not abridge. The lower court found that defendant was obligated to pay just compensation for condemning plaintiff's easements. Damages were awarded in the amount of those previously stipulated.

The defendant city now appeals, and we reverse.

Under the Michigan telephone act, MCL 484.1 *et seq.;* MSA 22.1411 *et seq.,* telephone companies are given the authority to construct telephone lines along public streets. Upon acquisition of the franchise from the state, a telephone utility's easement becomes a vested right. *City of Niles v Michigan Gas & Electric Co,* 273 Mich 255; 262 NW 900 (1935). This franchise from the state Legislature is separate from, and in addition to, any franchise granted by the local municipality in which the

utility operates. *Lansing v Michigan Power Co,* 183 Mich 400; 150 NW 250 (1914). Once the utility accepts the right to operate the franchise, it becomes a contractual right protected by the Fourteenth Amendment for the life of the utility corporation. *Id.*

The dispute in the present case is a simple one. Defendant contends that its police powers permit it to require plaintiff to move its facilities from one street to another for the purpose of making way for a public improvement. Plaintiff, on the other hand, contends that because its easements are vested, it may not be required to relocate its facilities without reimbursement from defendant, as would be the case in any condemnation proceeding.

Local governments have no inherent power to regulate public utilities. *Detroit v Michigan Public Utilities Comm,* 288 Mich 267; 286 NW 368 (1939). The power to do so must be expressly granted in the state constitution, statutes, or municipal charter in order for a municipality to be able to exercise such power. *Traverse City v Consumers Power Co,* 340 Mich 85; 64 NW2d 894 (1954), *Public Utilities Comm, supra.* As a general proposition, regulation of a public utility by a local government is valid and constitutional if it is authorized, reasonable, and related to public health, safety, or general welfare. *Kalamazoo v Kalamazoo Circuit Judge,* 200 Mich 146; 166 NW 998 (1918).

Thus, even though a utility has a valid franchise from the local municipality, it may be subject to all regulation by that governmental unit which is reasonably necessary to protect public welfare. *Consumers Power Co, supra, Detroit v The Fort Wayne & E R Co,* 90 Mich 646; 51 NW 688 (1892).

Further, even where the public utility is possessed of a franchise from the state, local units of government are not thereby divested of power to regulate the utility in such ways as are necessary to reasonably protect the general welfare of the community. *Consumers Power Co, supra.*

In *Center Line v Michigan Bell Telephone Co,* 26 Mich App 659; 182 NW2d 769 (1970), this Court held that where a telephone utility company was forced to relocate its equipment to make way for an urban renewal project, the burden of the relocation had to be born by the taxpayers, not the utility. However, the Court narrowed its holding to the specific case of urban renewal because the Court found that in that situation the Legislature exempted utilities from the common-law principle that subordinated their rights to those of the municipality to exercise the police powers. The Court noted:

"Nothing in this opinion should be construed as an attempt to alter the common law right of the city to subordinate the utility's interest to an exercise of police power in any other setting than urban renewal." *Id.,* 664.

Although our state Supreme Court has held that a school district was not empowered by the Legislature to require a public utility to relocate its facilities without compensation, *Detroit Board of Education v Michigan Bell Telephone Co,* 395 Mich 1; 232 NW2d 633 (1975), the Court left unanswered the question of whether relocation without compensation can be required by a governmental authority in other circumstances, such as those of the case at bar.

The authority of a municipality to exercise police powers for the common good and regulate a

utility was made evident in *Fort Wayne & E R Co, supra,* 654:

"The charter of the city of Detroit commits the regulation, supervision, and control of its streets to the common council. It empowers the council to improve the same and to determine the nature and details of such improvement. It gives to the common council the power to control, prescribe and regulate the manner in which the streets shall be used and enjoyed. These powers are held in trust for the public benefit. They cannot be surrendered or delegated to private parties. All franchises granted or contracts made with reference to the use of streets must be made, not only with due regard to their lawful and proper use by others, but subject to the exercise by the municipality of the powers referred to.

"The permission given respondent [the utility] to use this street is in subordination to the general power of the municipality over its streets. The city is not under obligation to conform its treatment of its streets to the construction of respondent's road-bed, but, on the contrary, respondent must conform the construction of its road-bed to such reasonable regulations as are made by the municipality in the reasonable exercise of its powers respecting the use, control, regulation, and improvement of its streets. Street railways occupy public streets subject to the use of such streets by the public, subject to such burdens as may be made necessary by reason of the improvement of such streets, and subject to such changes in the construction of road-beds as improved and changed conditions may demand."

At common law, and in most recent cases to consider this issue, the right of the public utility to use public streets is subject to the right of the local government to require the utility to relocate its lines and facilities at its own expense when made necessary by considerations of public health and welfare. *The Pacific Telephone & Telegraph Co v The Redevelopment Agency of Glendale,* 87

Cal App 3d 296; 151 Cal Rptr 68 (1978), *State Highway Dep't v Roberts*, 215 A2d 250 (Del Ch, 1965), *Chicago v Chicago City R Co*, 324 Ill 618; 155 NE 781 (1927), *Wichita v Kansas Gas & Electric Co*, 204 Kan 546; 464 P2d 196 (1970), *Commonwealth v Louisville Water Co*, 479 SW2d 626 (Ky, 1972), *Central Maine Power Co v Waterville Urban Renewal Authority*, 281 A2d 233 (Me, 1971), *Manchester Gas Co v Griffin Construction Co*, 119 NH 179; 399 A2d 970 (1979), *Port of New York Authority v Hackensack Water Co*, 41 NJ 90; 195 A2d 1 (1963), *Southern Union Gas Co v Artesia*, 81 NM 654; 472 P2d 368 (1970), *New York Telephone Co v Binghamton*, 18 NY2d 152; 219 NE2d 184 (1966), *Southern Bell Telephone & Telegraph Co v The Housing Authority of Raleigh*, 38 NC App 172; 247 SE2d 663 (1978), *Urban Renewal Agency of Eugene v Pacific Northwest Bell Telephone Co*, 23 Or App 384; 542 P2d 908 (1975), *State v Public Utilities Dist*, 55 Wash 2d 645; 349 P2d 426 (1960), *City of Edmonds v General Telephone Co of the Northwest, Inc*, 21 Wash App 218; 584 P2d 458 (1978).

The construction of a sewer facility clearly is a governmental function. *Beauchamp v Saginaw Twp*, 74 Mich App 44; 253 NW2d 355 (1977). Therefore, the case before us is unlike the situation in *Center Line, supra*, where the public utility was required to relocate equipment to make way for an urban renewal project which amounted to condemnation for a proprietary function rather than a governmental function. On the facts before us, then, we hold that the common-law rule requiring a utility to remove its facilities at its own expense where necessary to protect the public health or general welfare is applicable. As a conse-

quence, the lower court erred in holding that defendant was obligated to reimburse plaintiff for the relocation expenses.

Reversed.